[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
The defendant, Combustion Engineering, Inc., has moved for summary judgment on the ground that there is no genuine issue as to any material fact, and that it is entitled to judgment as a matter of law because the claims made by the plaintiff for certain benefits which he alleges are due him under his employment agreement with the defendant are pre-empted by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1144(a).
The plaintiff was appointed to the position of vice president for manufacturing of the defendant's "Fossil Systems Business" (FSB) division on July 18, 1989 after his acceptance on June 14, 1989 of a written offer of employment from Jeffrey L. Jackson, the defendant's vice president for human resources. The letter from Jackson, dated May 31, 1989, stated that he was convinced "beyond a shadow of a doubt that you are the person we need to fill our Manufacturing Vice President position" and then went on to describe the terms and conditions of his employment as well as certain incentive programs and severance pay plans that would be available to him upon his acceptance of the defendant's offer. Defendant's Exhibit B.
The first incentive benefit referred to in the offer letter was a "Performance Share Plan" to which the plaintiff would be entitled as a "C. E. Corporate Resource" by virtue of his position. The initial grant would be 1,500 shares and the letter stated that "C. E. will guarantee a minimum payout [under the plan] of $45,000 when your initial Performance Share grant of 1,500 shares matures."
The first of two severance plans described in the letter as available to the plaintiff was the "Corporate CT Page 3081 Resource Employees Combustion Engineering, Inc. Severance Pay Plan" (Defendant's Exhibit A) which provided a minimum of fifteen months of base pay in the event the plaintiff left his employment as a result of a "change in control" of the defendant. The plan provided for coverage of any person regularly employed and designated as a "Corporate Resource Employee" unless such person had an "individual severance agreement with the Company . . ." and was described as a "Severance Pay Plan, as defined under ERISA." Id. pp. 4, 7.
The "Change in Control Plan" states (p. 6) that "the benefits payable under the Plan are in lieu of the benefits under the Company's severance policy in effect immediately prior to the Change in Control." It also provides that the amount of the benefit is not to be reduced "by any compensation you otherwise earn." Id.
The defendant's written offer of employment (Defendant's Exhibit B) expressly states that the plaintiff's initial benefit "would provide 15 months of base pay as a severance benefit, should a change of control occur." It also states that payment of this benefit "would be in lieu of the severance benefit provided below, should you be involuntarily terminated from Combustion Engineering."
The severance benefit available to the plaintiff if he were to be involuntarily terminated except for cause or unsatisfactory performance is stated in the letter to be one year of base salary rather than the fifteen months under the "Change in Control Plan." It would also include as an additional benefit "pro-rata payment of all incentive plans, based upon performance levels achieved versus plan objectives, and executive outplacement."
In addition to the "Performance Share Plan" offered to the plaintiff as a designated "Corporate Resource", the letter stated that upon his acceptance of the offered position, the plaintiff, as a member of the FSB Executive Committee, would be entitled to participate in a "Management Incentive Plan" and a three-year, long-term incentive plan. Under the Management Incentive Plan, the "target annual incentive" was to be $40,000, with a guaranteed payment of $20,000 for 1989, and under the long-term incentive plan the "target" was to be $100,000 at the end of three years "with payment based on how well FSB performs CT Page 3082 against the established objectives of this plan" whose provisions had not yet been established at the time of the offer letter.
Combustion Engineering was acquired by Asea Brown Boveri, Inc. (ABB) on or about January 9, 1990, and as a result of this "change in control" the plaintiff's employment with Combustion Engineering ended on or about March 19, 1990. The plaintiff was paid a severance benefit of $187,525.00 under the "Change in Control Plan" and thereafter accepted a position with another company.
On June 29, 1990 the plaintiff, in a letter to ABB Combustion Engineering Systems (Defendant's Exhibit D), submitted "three invoices for payments due under the terms of the letter offer made to me by Mr. Jeffrey L. Jackson, dated May 31, 1989." The first invoice was for $65,000, the claimed value of 1,500 shares of Combustion Engineering stock under the "Performance Share Plan", the second was for $30,355.55, representing a pro rata payment under the long-term incentive plan, and the third for $15,384.62, as a pro rata payment under the 1990 Management Incentive Plan.
By letter dated September 13, 1990 (Defendant's Exhibit E) from Jeffrey Jackson, the plaintiff was advised that he would be paid a prorated portion of the 1990 Management Incentive Plan "based on the achievement of Systems' financial goals" during the period of his employment in that year. He was also advised that "there is no basis for your claim that you are owed prorated portions of other incentive or stock plans."
In addition to the foregoing documents, the defendant submitted an affidavit of John Faucette, a vice president of Combustion Engineering, Inc., Windsor Support Services, in support of the motion, which states that the terms and conditions of the plaintiff's employment were set forth in the offer of employment letter of May 31, 1989. It also states that "[p]ursuant to the express terms of the Change in Control Plan, as well as the terms of his offer letter, the benefits paid to Mr. Mantos were in lieu of any other benefits such as the pro rata payments of incentive plans."
The plaintiff commenced this action on October 22, 1990 to recover the balances claimed to be due him under the CT Page 3083 defendant's three incentive plans prorated for the period of his employment. His complaint as amended consists of three counts which assert causes of action for breach of an express contract, promissory estoppel and breach of an implied contract, all of which are based on the employment agreement between the parties and its alleged breach by the defendant.
The defendant, in its answer to paragraph 5 of the first count of the amended complaint, admitted that Jackson's letter of May 31, 1989 "contains terms of employment", but denied that "both parties intended the employment relationship to be governed [by them]." The defendant in response to paragraph 7, also admitted that both parties signed the letter of May 31, 1989, "which letter speaks for itself", but denied that both parties "accepted [it] as the final and complete statement of their agreements and covenants", and in response to paragraph 8 denied that the "terms of the contract" included any of the three incentive plans referred to in the letter.
The defendant asserts in its brief in support of the motion for summary judgment (p. 9) that "the plaintiff is seeking to recover benefits from an employee welfare benefit plan" and that his common law contractual claims are therefore preempted by ERISA. The defendant argues, based on Metropolitan Life Insurance Co. v. Taylor, 481 U.S. 58, at 62-63 (1987), that because this is clearly "a suit by a beneficiary to recover benefits from a covered plan, it falls directly under 502(a)(1)(B) of ERISA, which provides an exclusive federal cause of action for resolution of such disputes."
The plaintiff argues in opposition to the motion that the incentive benefit payments he seeks to recover in this action are not mentioned or included in the "Change in Control" ERISA Benefit Plan. He claims that the incentive plans which are the subject of this action were "individually negotiated and tailored for his benefit" and that such individual employment contracts are not "employee benefit plans" within the meaning or purpose of ERISA.
ERISA is a comprehensive statutory scheme "for the federal regulation of private employee benefit plans, including both pension plans and welfare plans." District of Columbia v. Greater Washington Board of Trade, 113 S.Ct. CT Page 3084 580, 582 (1992). Employee severance benefit plans which are payable only upon termination of employment, are employee welfare benefit plans within the meaning of the Act. Massachusetts v. Morash, 490 U.S. 107, 116 (1989).
On the other hand, payments made to employees that are associated with regular wages or salaries and which are fixed, due at known times and are not triggered by unforeseen contingencies "present none of the risks that ERISA is intended to address [because] the danger of defeated expectations of wages for services performed [is] a danger Congress chose not to regulate in ERISA." Id. 115. Congress in enacting ERISA did not "attempt to control every aspect of the employer-employee relationship or every promise made to employees [but] sought only to deal with those types of plans that had created the problems it sought to remedy." Murphy v. Inexco Oil Co., 611 F.2d 570, 574 (5th Cir. 1980).
Where the objective of an employment agreement was "to provide a financial incentive for plaintiff to improve his performance while employed" by the defendant and there was no guarantee that he would receive any payment at all if the projected goals were not met, such incentive payments, if any, constituted present benefits, and such an agreement is neither an employee pension plan nor an employee benefit plan subject to ERISA. Hagel v. United Land Co.,759 F. Sup. 1199, 1203-04 (E.D. Va. 1991). "While the facts of this case may give rise to valid state and common law claims, they do not support an action brought in federal court under ERISA." Id.
A discretionary incentive plan which provides that bonuses be given in recognition of special service and awarded in addition to regular compensation is designed to provide current income and "the vesting, funding and insurance provisions of ERISA [are] inapplicable to [them]." Murphy v. Inexco Oil Co., 611 F.2d 570, 575-76 (5th Cir. 1980). Similarly, it has been held that a stock bonus plan "does not fit within ERISA's definitional framework" of an employee welfare or pension plan even though the stock was not redeemable until termination or retirement. Foltz v. U.S. News World Report, 627 F. Sup. 1143, 1164 (D. D.C. 1986).
The defendant asserts that the pro rata payments of the CT Page 3085 incentive benefits described in the offer letter were to be made only under the Involuntary Termination Plan referred to therein and that the offer letter itself constitutes Combustion Engineering's "Involuntary Termination ERISA Plan." Cited as authority for that claim is Hamilton v. Air Jamaica, Ltd., 945 F.2d 74, 77 (3rd Cir. 1991), which was an action brought by an employee for severance benefits described in the company's handbook, rather than in an individually negotiated employment agreement.
An individually negotiated contract of employment which is a "present compensation arrangement" in consideration for the employee's services does not create an ERISA plan and does not preempt a common law action for breach of contract in a state court. Jervis v. Elerding, 504 F. Sup. 606, 609
(C.D. Cal. 1980). Where employment contracts providing for deferred compensation are individually negotiated with selected individuals for top management positions and "[t]here are no plan documents, no funding accounts, no named fiduciaries or trustees, and no assets held in trust", the deferred compensation provisions are not part of an ERISA-covered benefit plan. Lackey v. Whitehall Corp., 704 F. Sup. 201, 205
(D. Kan. 1988).
The defendant argues nevertheless that despite the fact that the plaintiff seeks only to recover incentive benefits claimed to be due him under an individually negotiated employment contract, his acceptance of the severance payment under the express terms of the "Change in Control Plan" was "in lieu of" any of the three incentive benefits that he claims under the express terms of the Plan as incorporated by reference into the offer letter. Therefore, he asserts that the plaintiff's state law claims are preempted by ERISA because they "depend entirely on the existence, operation and alleged breach of the promises embodied in the severance pay plan." See Bellino v. Schlumberger Technologies, Inc.,753 F. Sup. 391, 392 (D. Me. 1990).
The court has already noted, however, that the ERISA plan explicitly recognizes that a "Corporate Resource Employee" may have an "individual severance agreement with the Company", thereby excluding from its coverage individually negotiated employment contracts. It also provides that the amount of the benefit is not to be reduced "by any compensation you otherwise earn." CT Page 3086
More importantly, many factual issues essential to the determination of the question of preemption remain unresolved. For example, the defendant's answer denies that "both parties intended the employment relationship to be governed" by the terms of employment contained in the offer letter.
The defendant has also denied that both parties accepted the letter offer "as the final and complete statement of their agreements and covenants." Moreover, its denial that the "terms of the contract" included any one of the three incentive plans is contradicted by Jackson's letter of September 13, 1990 conceding the plaintiff's claim under the Management Incentive Plan, which the court may properly treat as an admission rather than a "hypothetical concession." Evans Products Co. v. Clinton Building Supply, Inc.,174 Conn. 512, 518.
The affidavit of John Faucette sheds no light on these unresolved factual issues because it merely restates the defendant's legal claims, and is inadmissible in any event under 381 of the Practice Book which requires that "affidavits shall be made on personal knowledge, shall set forth facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Affidavits made by corporate officers must affirmatively show personal knowledge of the matters stated therein. Evans Products Co. v. Clinton Building Supply, Inc., 174 Conn. 512, 515.
On the other hand, an affidavit from Jeffrey Jackson is conspicuous by its absence from the defendant's submission because Jackson's direct personal participation in the contract negotiations and the subsequent processing and denial of the plaintiff's claim clearly qualifies him as a knowledgeable affiant concerning the issues that are contested in the pleadings.
The record before the court is also silent as to whether the plaintiff's claims were presented to the plan administrator, apparently one Dale E. Smith (Defendant's Exhibit A, p. 7), and whether they were considered and determined by him as the defendant seems to imply in its brief. Instead, the defendant relies on the plaintiff's CT Page 3087 deposition responses which cannot be treated as judicial admissions under General Statutes 52-200. Esposito v. Wethered, 4 Conn. App. 641, 645.
The party moving for summary judgment has the burden of showing the absence of any issue as to all the material facts which, under applicable principles of substantive law, entitle him to judgment as a matter of law. Plouffe v. New York, N.H. H.R. Co., 160 Conn. 482, 488. In order to satisfy this burden, the movant must show that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact. Id.
The court may not properly grant a motion for summary judgment where "factual issues, contested in the pleadings and not even referred to in the [defendant's affidavit], remained unresolved . . . ." Id. 489. Summary judgment is not intended as a substitute for the trial of issues at an evidentiary hearing even though both parties may have assumed that there was no dispute as to the material subordinate facts. Pine Point Corp. v. Westport Bank Trust Co.,164 Conn. 54, 56.
For the foregoing reasons, the defendant's motion for summary judgment is denied.
Hammer, J.